IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KARL HEINZ KREY

    v.      :      Civil Action No. DKC 15-3800

MEGAN BRENNAN, Postmaster
General, United States Postal
Service, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this tort action are (1) the motion to dismiss or, in the alternative, for summary judgment filed by Defendant the United States of America (the "United States") (ECF No. 33), and (2) the motion for summary judgment filed by Defendants 6900 Wisconsin Avenue LLC and WPC Management LLC (the "Landlord Defendants") (ECF No. 36). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be granted.

**I. Background**[1]

The Landlord Defendants own the building located at 6900 Wisconsin Avenue in Bethesda, Maryland, which they lease to the United States. (ECF No. 36-2, at 2). The United States

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

operates a branch of the United States Postal Service ("USPS") out of this location (the "Bethesda Post Office"). (*Id.*). On December 20, 2012, Plaintiff Karl Heinz Krey ("Plaintiff") entered the lobby of the Bethesda Post Office at around 8:00 p.m. and slipped on a wet area of the floor, which resulted in a broken hip. (ECF No. 33-2, at 29).

Employees at the Bethesda Post Office serve customers from 9:00 a.m. to 5:00 p.m. on weekdays. (ECF No. 33-3, at 19). According to the Postal Operations Manual ("POM"), "[a]t the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO Boxes and self-service equipment, provided that customer safety and security provisions are deemed adequate by the Inspection Service." (ECF No. 33-6, at 108). While the Bethesda Post Office service windows close at 5:00 p.m., the lobby area remains open twenty-four hours per day pursuant to the postmaster's decision under this POM provision. (ECF No. 33-3, at 19).

During wet weather conditions, the Bethesda Post Office generally follows procedures outlined in the Maintenance Handbook on Floors, Care, and Maintenance (the "Maintenance Handbook") published by the USPS Office of Management and Maintenance. The Maintenance Handbook states:

> In order to avoid serious injuries caused by slips and falls on wet floors, use the following guidelines:

> k. Use Wet Floor signs freely and place them in high visibility areas to alert employees and/or customers.
>
> l. When possible, close off the area by barricading it with safety rope.
>
> m. During rainy or snowy weather, place safety matting in employee/customer entrances, such as lobbies and vestibules.
>
> n. Repeatedly mop up water that has been tracked in.
>
> o. When mopping or scrubbing floors, complete work in one small section at a time.
>
> p. After scrubbing or wet mopping the floor, check it for a slippery film. If a film is present, rescrub or mop the floor using a neutralizer to remove the film.

(ECF No. 40-4, at 7). After the service windows close, the last employee at the Bethesda Post Office usually checks the condition of the lobby at around 6:30 p.m. (ECF No. 33-3, at 28). If the floor is wet, or if it is raining or snowing outside, that employee will place additional matting and yellow caution signs in the customer access area to warn customers of potentially slippery conditions. (ECF No. 33-3, at 17-18, 20).

In his deposition, Plaintiff's expert, Scott Moore, testified that rain was in the forecast for the evening hours of December 20, and that there had been rain in the area during the

3

afternoon.  (ECF No. 40-2, at 14).  Mr. Moore concluded that it would have been reasonable to assume that someone would track water into lobby that evening.  (*Id.* at 25).  Nevertheless, Bethesda Post Office employees did not place additional matting or caution signs that night.  (ECF No. 33-2, at 21).  By the time Plaintiff entered the Bethesda Post Office at around 8:00 p.m., the rain outside had caused a wet floor in the lobby.  (*Id.* at 29).  As Plaintiff was taking a step on to the linoleum floor, he fell onto his right side, causing a right-hip fracture.  (*Id.*).  In Plaintiff's deposition, he described the floor as being "like polished ice."  (*Id.*).

On December 15, 2015, Plaintiff filed a complaint for negligence against the Postmaster General of the USPS, 6900 Wisconsin Avenue LLC, and WPC Management LLC.  (ECF No. 1).  On April 12, 2016, the parties filed a consent motion to substitute the United States for the Postmaster General, which was granted. (ECF Nos. 18; 19).  After discovery, the United States filed the pending motion to dismiss, or in the alternative for summary judgment, on December 23.  (ECF No. 33).  Plaintiff responded to the United States' motion (ECF No. 40), and it replied (ECF No. 43).  The Landlord Defendants filed their motion for summary judgment on January 6, 2017 (ECF No. 36), and Plaintiff did not respond in opposition.

**II. The United States' Motion To Dismiss**

**A. Standard of Review**

The United States first argues that sovereign immunity presents a jurisdictional bar to Plaintiff's claim. (ECF No. 33-1, at 20). Generally, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999). The party bringing suit in federal court bears the burden of proving that subject matter jurisdiction properly exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In a Fed.R.Civ.P. 12(b)(1) motion, the court may consider evidence outside the pleadings to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

**B. Analysis**

Plaintiff alleges that the United States was negligent in failing to place additional matting on the lobby floor or to post warning signs on the evening of the accident. (ECF No. 1 ¶¶ 22-26). The United States is generally immune from suits by

private individuals, but the Federal Tort Claims Act ("FTCA") provides a limited waiver of that sovereign immunity with respect to certain types of tort actions. *See* 28 U.S.C. §§ 1346(b), 2674. Under the FTCA, the United States is liable for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment." *Id.* § 1346(b). The potential liability of the United States under the FTCA is limited "by a number of exceptions." *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012). One such exception is for discretionary functions. *See* 28 U.S.C. § 2680(a).

"The discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain government activities from exposure to suit by private individuals.'" *Id.* (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). Under the exception, the United States may not be held liable for any claim based upon (1) "an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation," or (2) "the exercise or performance or the failure to exercise or perform a discretionary function or duty on part of a federal agency or an employee of the Government,

whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Plaintiff bears the burden of showing that the discretionary function exception does not apply. *See Indem. Ins. Co. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). "If the discretionary function exception does apply, the district court must dismiss the affected claims for lack of subject matter jurisdiction." *Id.*

Determining whether an act is discretionary under the FTCA involves a two-step process. First, conduct by a federal employee cannot fall within the discretionary function exception unless it "involves an element of judgment or choice." *Holbrook*, 673 F.3d at 345 (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). The discretionary function exception will not apply "'when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow' because 'the employee has no rightful option but to adhere to the directive.'" *Indem. Ins. Co.*, 569 F.3d at 180 (quoting *Berkovitz*, 486 U.S. at 536). Second, "even if 'the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield,' that is, decisions 'grounded in social, economic, and political policy.'" *Smith v. Wash. Metro Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002) (quoting *Berkovitz*, 486 U.S. at 537).

In considering this step, the court does not focus on "the agent's subjective intent in exercising the discretion, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). In other words, analysis under the second prong of the discretionary function exception is not a fact-intensive exercise, as the court will only "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993). "Where . . . a regulation authorizes or requires employee discretion, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Holbrook*, 673 F.3d at 345 (quoting *Gaubert*, 499 U.S. at 324).

The United States argues that it is immune from liability because the postmaster's decision to keep the lobby open twenty-four hours is a discretionary function. (ECF No. 33-1, at 12). It maintains that the POM specifically grants the postmaster discretion and that there is no other statute, regulation, or policy on point that would limit the "judgment or choice" at the first step of the discretionary function inquiry. Plaintiff does not dispute that the decision to stay open twenty-four hours is discretionary. Rather, he counters that the United

States focuses on the wrong conduct. The proper conduct at issue, he contends, is the United States' failure to mitigate possible danger by putting out floor mats and warning signs as prescribed in the Maintenance Handbook. (ECF No. 40, at 11).

"Before a court can apply the two-part test to determine whether the discretionary function exception applies, the court must first identify the 'conduct at issue.'" *Bell v. United States*, 238 F.3d 419 (6th Cir. 2000) (unpublished table opinion). In a similar case, the United States Court of Appeals for the Fourth Circuit held that, where the United States' "maintenance decisions with respect to facilities . . . fall within the overarching policies . . . that gives officers discretion," the decision made under the overarching policy is the conduct at issue. *Wood v. United States*, 845 F.3d 123, 131 (4th Cir. 2017). In *Wood*, the Fourth Circuit found that the Navy's "first-order decision" of whether and how to allow the use of its facilities by local law enforcement agencies, a decision committed to discretion by statute, encompassed "several additional decisions . . . under the umbrella of its initial decision . . . [that] were necessarily informed by the same policy considerations expressed in the statutes." *Id.* at 130. The court found that the Navy's decision not to place a warning sign next to a particular part of the facility was too narrow to be the conduct at issue. *Id.* at 131. Exposing the government to liability for

9

such decisions would make the threat of tort liability so strong as to shape the Navy's discretionary decision whether or not to open, "which is exactly what the discretionary function exception seeks to avoid." *Id.*

Courts of Appeals in two other circuits have reviewed facts nearly identical to those presented here and held that the conduct at issue was the postmaster's decision to stay open twenty-four hours. *See Hogan v. U.S. Postmaster Gen.*, 492 F.App'x 33, 36 (11th Cir. 2012); *Bell*, 238 F.3d 419, 2000 WL 170932, at *4. Plaintiff's attempts to distinguish this case from *Hogan* and *Bell* on minor factual differences (*see* ECF No. 40, at 12-17) are unpersuasive. Primarily, Plaintiff argues that *Hogan* and *Bell* were wrongly decided and that it "simply does not make sense that the mandates found in the [Maintenance] Handbook should be utilized during business hours but do [not] have to be adhered to after hours[,] as the *Hogan* court suggested." (*Id.* at 13). By the same logic, however, Plaintiff's proposal would also compel the government to follow the Maintenance Handbook's requirements that it "[r]epeatedly mop up water that has been tracked in" or for failing, "[a]fter scrubbing or wet mopping the floor, [to] check it for slippery film." (*See* ECF No. 40-4, at 7). Quite clearly, the United States could not maintain the standards in the Maintenance Handbook while exercising discretion to leave the lobby open and

unstaffed.  To hold the government liable for failing to do so here would allow "[t]he threat of tort liability [to] become a tool to shape [the] policy, which is exactly what the discretionary function exception seeks to avoid."  *Wood*, 845 F.3d at 131.  The conduct at issue is therefore the postmaster's decision to leave the lobby open for twenty-four hours.

With respect to the first prong of the discretionary function exception, then, the postmaster's decision to keep the lobby open twenty-four hours clearly "involves an element of judgment or choice."  *Holbrook*, 673 F.3d at 345.  As noted above, the POM states, "At the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO Boxes and self-service equipment, provided that customer safety and security provisions are deemed adequate by the Inspection Service."  (ECF No. 33-6, at 108).  Although the POM mentions safety provisions, "nothing about [the POM] suggests that it mandates the specific procedures for wet floor maintenance contained in the Postal Service Maintenance Handbook."  *Hogan*, 492 F.App'x at 36.[2]  Therefore, the first prong of the discretionary function test is satisfied.

---

[2] The postmaster's discretion is limited only by the requirement that "customer safety and security provisions are deemed adequate by the Inspection Service."  (ECF No. 33-6, at 108).  The Inspection Service is "the federal law enforcement, crime prevention, and security arm of the Postal Service" tasked with "protect[ing] the U.S. Postal Service and its employees,

11

With respect to the second prong of the discretionary function exception, the postmaster's decision to keep the lobby open twenty-four hours is "susceptible to policy analysis." *See Gaubert*, 499 U.S. at 325. The decision to leave the lobby open is an operational decision that requires an evaluation of the costs to the government and the benefit to the community. It inherently "involves the 'exercise of political, social, or economic judgment.'" *See Smith*, 290 F.3d at 209. The second prong of the test is satisfied, and the discretionary function exception to the FTCA applies. Therefore, the court lacks subject matter jurisdiction, and the United States' motion to dismiss will be granted.[3]

---

infrastructure, and customers; enforc[ing] the laws that defend the nation's mail system from illegal or dangerous use; and ensur[ing] public trust in the mail." *See Mission Statement*, U.S. Postal Inspection Serv., https://postalinspectors.uspis.gov/aboutus/mission.aspx (last visited June 26, 2017); *see also Jurisdiction and Laws*, U.S. Postal Inspection Serv., https://postalinspectors.uspis.gov/aboutus/laws.aspx (last visited June 26, 2017) (enumerating the types of enforcement actions under the Inspection Service's purview). The Maintenance Handbook is produced by a separate USPS entity, the Office of Maintenance Management. (ECF No. 40-4, at 2). The Inspection Service therefore does not appear to have any bearing on custodial decisions like the ones at issue in this case.

[3] Because the court lacks subject matter jurisdiction over Plaintiff's claim, the United States' substantive tort arguments are not considered in this opinion.

**III. The Landlord Defendants' Motion For Summary Judgment**

**A.     Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248-50. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

**B. Analysis**

To prove negligence under Maryland law, a plaintiff must show that: (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999). The Landlord Defendants assert that summary judgment is warranted in their favor because they were under no duty as lessors of the property to protect Plaintiff from alleged dangerous conditions. (ECF No. 36, at 1-2).[4] The Court of Appeals of Maryland has long held that "a landlord is not ordinarily liable to a tenant or guest of a tenant for injuries from a hazardous condition in the leased premises that comes into existence after the tenant has taken possession." *See*

---

[4] The Landlord Defendants do not challenge subject matter jurisdiction in this case. Because Plaintiff and the Landlord Defendants are all residents of Maryland, jurisdiction over these Defendants appears to be supplemental to Plaintiff's claim against the United States under the FTCA. A federal court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Even when a court grants a motion to dismiss for failure to state a federal claim, however, "the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Because the substantive claims in the Landlord Defendants' motion can be easily resolved without consideration of novel or complex issues of Maryland law, the Landlord Defendants' motion will be considered.

14

*Matthews v. Amberwood Assocs. Ltd. P'ship*, 351 Md. 544, 556-57 (1998) (citing *Marshall v. Price*, 162 Md. 687, 689 (1932)). Plaintiff failed to offer any opposition to the Landlord Defendants' motion, and it is undisputed that the United States had leased and taken possession of the Bethesda Post Office property at the time of Plaintiff's injury. (*See* ECF No. 36-2, at 2). Therefore, the Landlord Defendants had no duty to protect Plaintiff from injury, and their motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendant the United States of America will be granted, and the motion for summary judgment filed by Defendants 6900 Wisconsin Avenue LLC and WPC Management LLC will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge